563 P.2d 610

**Eddie P. VALLES, Petitioner-Appellant,**

v.

**STATE of New Mexico, Respondent-Appellee.**

**No. 2734.**

Court of Appeals of New Mexico.

March 29, 1977.

Certiorari denied May 4, 1977.

Charles Driscoll, Albuquerque, for petitioner-appellant.

Toney Anaya, Atty. Gen., John Duran, Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

HERNANDEZ, Judge.

The defendant's motion for post-conviction relief, brought pursuant to Section 21–1–1(93), N.M.S.A. 1953 (Repl. Vol. 4, 1970), subsequently superseded by Section 41–23–1 et seq., N.M.S.A. 1953 (2d Repl. Vol. 6, Supp. 1975), raises the question of whether

the following rule laid down in *State v. Sparks,* 85 N.M. 429, 512 P.2d 1265 (Ct.App. 1973) should be accorded retroactive application:

"[O]nce the witness has testified at the criminal trial about that which he testified before the grand jury, the accused is entitled to an order permitting examination of that portion of the witness' grand jury testimony relating to the crime for which defendant is charged."

The prior rule, promulgated in *State v. Tackett,* 78 N.M. 450, 432 P.2d 415 (1967), 20 A.L.R.3d 1 (1968), cert. denied 390 U.S. 1026, 88 S.Ct. 1414, 20 L.Ed.2d 283 (1968), was that the transcript of the testimony of witnesses before a grand jury need not be supplied to defendants in the absence of a showing of a particularized need for such transcript.

In May, 1971, the defendant was convicted of three counts of armed robbery. Three of the witnesses who testified before the grand jury also testified against the defendant at trial. On the first day of trial one of these three witnesses, Dale Blythe, was examined. At the start of the second day of the trial the defendant made a motion for production of the transcript of the grand jury minutes for purposes of cross-examination. The motion was denied. Defendant appealed, alleging as his first point of error that the trial court had erred in denying his motion for production of the transcript of the grand jury minutes. We affirmed his conviction, *State v. Valles,* 83 N.M. 541, 494 P.2d 619 (Ct.App. 1972). His first point of error in that appeal was denied on the ground that defendant did not show a particularized need as required by *Tackett,* supra.

Section 21–1–1(93), supra, provides in part:

"A prisoner in custody under sentence of a court established by the laws of New Mexico claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution of the United States, or of the Constitution or laws of New Mexico . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

The trial court denied defendant's Rule 93 motion on the grounds that the demand for the transcript of the grand jury minutes had been considered on appeal and that the denial was correct under the then-prevailing rule and that the new rule should not be retroactively applied.

■  Before considering the question of retrospectivity, we must consider whether this is a proper case for post-conviction consideration under Rule 93. This rule was adopted from the federal judicial code, 28 U.S.C. § 2255; interpretations of that section, although not binding upon us, are nonetheless persuasive.

". . . § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus. . . . '[T]he sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.' . . . 'As a remedy, it is intended to be as broad as habeas corpus.'

.    .    .    .    .

"This is not to say, however, that every asserted error of law can be raised on a § 2255 motion. . . . [T]he appropriate inquiry . . . [is] whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

". . . [T]he availability of collateral remedies is necessary to insure the integrity of proceedings at and before trial where constitutional rights are at stake." *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).

■  Article II, § 7 of the Constitution of New Mexico provides: "The privilege of the writ of habeas corpus shall never be suspended, unless, in case of rebellion or inva-

sion, the public safety requires it." And, Article II, § 14 provides in part: "In all criminal prosecutions, the accused shall have the right to appear and defend himself in person, and by counsel; to demand the nature and cause of the accusation; *to be confronted with the witnesses against him . . . .*" [Emphasis added]. As we stated in *State v. Sparks,* supra:

"The right of cross-examination is [implicit in] the constitutional right to be confronted with the witnesses against one.

.   .   .   .   .

" '.   .   . The State has no interest in denying the accused access to all evidence that can throw light on issues in the case, and, in particular, the state should have no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits.'

.   .   .   .   .

"If otherwise, an accused is denied the right to confront the witnesses against him."

And as we further stated in *State v. Romero,* 87 N.M. 279, 532 P.2d 208 (Ct.App. 1975):

"It has long been recognized that a transcript of prior testimony is a most useful tool in mounting an attack upon the credibility of witnesses. [citation omitted] The refusal to give a copy of the grand jury testimony of witnesses who would also testify at trial on the same subject matter has been held to deny a defendant the right of effective cross-examination."

Clearly the question of a denial of the constitutional right of confrontation is cognizable under a Rule 93 proceeding.

█ As to the question of the trial court's denying defendant's motion on the ground that the issue of the denial of the grand jury minutes had been considered on the prior appeal, the trial court was in error. The purpose of Rule 93 was to allow a collateral review as to the validity of a conviction. *State v. Ramirez,* 78 N.M. 418, 432 P.2d 262 (1967). The defendant's con-

viction may have been valid by the constitutional standards in effect when it took place, but not valid when measured by the higher standard of *Sparks.* To accept the trial court's reasoning in this instance would be contrary to the very purpose of Rule 93. Rule 93 was not intended to allow collateral review of claimed error which has already been raised and decided on direct appeal. Only in cases such as in the instant case where there has been a change in the law governing the error is a Rule 93 review proper.

We turn then to the question of the retrospectivity of the rule in *Sparks.* Because of the paucity of New Mexico cases on this subject we look to the decisions of the federal courts for guidance. Prior to *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1964), all opinions of the Supreme Court of the United States giving a new and broader interpretation of the Bill of Rights in criminal cases were given retrospective effect. The following position, however, was adopted in *Linkletter:*

"At common law there was no authority for the proposition that judicial decisions made law only for the future. Blackstone stated the rule that the duty of the court was not to 'pronounce a new law, but to maintain and expound the old one.' .   .   . The judge rather than being the creator of the law was but its discoverer.

.   .   .   .   .

"Implicit in such an approach is the admission when a case is overruled that the earlier decision was wrongly decided.

.   .   .   .   .

"However, some legal philosophers continued to insist that such a rule was out of tune with actuality largely because judicial repeal ofttime did 'work hardship to those who [had] trusted its existence.' .   .   . Chief Justice Hughes in *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) .   .   . reasoned that the actual existence of the law prior to the determination of unconstitutionality 'is

an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration.'

.    .    .    .    .

"Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective.

.    .    .    .    .

"While the cases discussed above deal with invalidity of statutes or the effect of a decision overturning long established common-law rules there seems to be no impediment—constitutional or philosophical—to the use of the same rule in the constitutional area where the exigencies of the situation require such an application.

.    .    .    .    .

"Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation."

In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) the Supreme Court further amplified the test to be applied in deciding whether a given opinion should be given retroactive application:

"The criteria guiding resolution of the question implicate (a) the purposé to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

The Supreme Court in ·Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972), had before it the question of whether *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), should be given retroactive application. The holding in *Coleman* was that a preliminary hearing was a critical stage of the criminal process at which the accused was constitutionally entitled to the assistance of counsel. The Supreme Court held that *Coleman* should not be given retroactive application. The Court did state the following, however:

"We have given complete retroactive effect to the new rule, regardless of good-faith reliance by law enforcement authorities or the degree of impact on the administration of justice, where the 'major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials.    .    .  .' "

■■ Most of the rules of evidence and procedure governing the conduct of criminal trials were designed to enhance the truth-finding process, to the end that we do not convict an innocent person. However, as we indicated in *Sparks* and *Romero,* supra, the right of confrontation is not a mere rule of evidence or procedure but a constitutional right of primary importance in the truth-finding process, because we have yet to devise a more effective method of eliciting the truth than effective cross-examination. The function and importance of this constitutional right and the concomitant right of cross-examination mandates retroactivity, regardless of previous reliance on the old rule or the possible impact on the administration of justice.

Whether there is or is not anything in the grand jury minutes that might be of aid to the defendant in cross-examination should not be determined by a court. As was stated in *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966): "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate."

The judgment is vacated and the case remanded with instructions to grant the defendant a new trial.

IT IS SO ORDERED.

SUTIN, J., specially concurs.

HENDLEY, J., dissents.

SUTIN, Judge (specially concurring).

I concur in the result.

Defendant moved that the judgment and sentence of the trial court affirmed in *State v. Valles*, 83 N.M. 541, 494 P.2d 619 (Ct.App. 1972) be vacated and set aside pursuant to Rule 93 of the Rules of Civil Procedure, and that defendant be granted a new trial. The basis of the motion was that defendant was denied his constitutional right to confront and cross-examine three grand jury witnesses who testified against him at trial. Evidence of what occurred at the trial was presented.

A hearing was held. The trial court found:

8. At the jury trial . . . the first witness for the prosecution, Dale Eugene Blythe, finished his testimony and was excused from the stand on a Friday afternoon. When the trial resumed on Monday, the attorney for the Defendant Valles requested the Grand Jury minutes in their entirety for all witnesses testifying at the Grand Jury, and in support of his request, stated that he needed the minutes so that he might use them for cross examination of all state witnesses. The request was denied by the trial judge, the Honorable Harry E. Stowers, Jr.

The court concluded:

2. . . . . Once an issue has been raised and litigated by a Defendant upon direct appeal and decided adversely to him, it cannot be raised again in post-conviction proceedings.

.    .    .    .    ..

4. The ruling of the trial judge . . was correct, and in accordance with the rule prevailing at that time that a defendant was not entitled to the Grand Jury minutes absent a showing of particularized need.

5. The ruling was also correct for the additional reason that the demand for Grand Jury minutes was not timely, Defendant hving [sic] waited until the time of trial to make such demand, after the first State witness had left the stand and had been excused.

6. Decisions subsequent to the date of Defendant's trial have judicially created a new procedural right of a defendant to have access to Grand Jury minutes of a state witness at trial following his direct testimony. There is no authority for making such a rule retroactive.

7. . . . [E]ven if Defendant were entitled to raise the issue of retroactivity, application . . . does not call for making the right of access to Grand Jury transcripts retroactive.

8. . . . . None of the requisities [sic] for post-conviction relief are present here, and the State is entitled to a dismissal with prejudice.

#### A. *The trial court's conclusions were erroneous.*

(1) *Conclusion of Law No. 2 is erroneous.* That the error litigated cannot be relitigated is correct. *State v. Williams*, 78 N.M. 431, 432 P.2d 396 (1967). *State v. Garcia*, 80 N.M. 21, 23, 450 P.2d 621, 623 (1969) inadvertently stated that the error cannot be relitigated "even though the errors relate to constitutional rights." No authority is cited and none can be found. We mistakenly followed this rule. *State v. Giliihan*, 86 N.M. 439, 524 P.2d 1335 (1974); *State v. Jones*, 84 N.M. 500, 505 P.2d 445 (Ct.App. 1972). Rule 93 and Rule 93(b) of the Rules of Civil Procedure [§ 21–1–1(93) and 93(b), N.M.S.A.1953 (Repl.Vol. 4)] specifically allows the trial court to grant a new trial if the court finds that there has been a denial or infringement of constitutional rights of the prisoner. Defendant's claim for relief is based on constitutional grounds.

(2) *Conclusions of Law Nos. 4 and 5 are erroneous.* The rule of "particularized need" arises when the grand jury testimony is requested "in advance of trial." *State v. Tackett*, 78 N.M. 450, 432 P.2d 415 (1967); *State v. Vigil*, 85 N.M. 735, 516 P.2d 1118 (1973). The proper time to make a demand for grand jury testimony during trial is when the grand jury witness testifies at

trial and the defendant wants to cross-examine. *State v. Morgan*, 67 N.M. 287, 354 P.2d 1002 (1960).

(3) *Conclusions of Law Nos. 6 and 7 are erroneous.* Retroactivity of later decisions creating a new method of procedure to obtain relief, and the right to grand jury testimony, is irrelevant. The rights that defendant had were in effect prior to *State v. Valles, supra*. Retroactivity was not applicable.

Valles' trial was held in 1971, and the appeal was decided in 1972. Article II, Section 14 of the New Mexico Constitution grants to defendant the right "to be confronted with the witnesses against him". One of the purposes of confrontation is to secure the right of cross-examination. *Mascarenas v. State*, 80 N.M. 537, 458 P.2d 789 (1969); *State v. James*, 76 N.M. 376, 415 P.2d 350 (1966); *State v. Halsey*, 34 N.M. 223, 279 P. 945 (1929).

*State v. Morgan, supra*, held that a defendant was entitled during trial to grand jury testimony of witnesses who testified at trial.

Prior to Valles' conviction and affirmance on appeal, Valles had the right to grand jury testimony for purposes of cross-examination. The denial of grand jury testimony was a violation of Valles' constitutional rights.

### B. *State v. Valles was decided erroneously.*

*State v. Valles, supra*, was erroneously decided on two grounds. This Court held that Valles was not entitled to grand jury testimony because (1) "nothing in the record shows the grand jury minutes were used at the trial." (2) There was no particularized need. The Court said that "Defendant is required to bring himself within the disclosure situations of the *Morgan* and *Tackett* cases." Judicial history of this subject discloses that the Court was wrong.

*State v. Morgan, supra*, marks the beginning of the doctrine of utilization by defendant of grand jury testimony during the trial of a case. Here, "At the trial, two of the witnesses for the state, having previously testified before the grand jury, were examined by the district attorney, *who used the transcript of their grand jury testimony as a basis for his questions.* Counsel for Morgan requested the right to inspect the transcript as to the testimony of these two witnesses, but such request was refused. . . . *It must be conceded that the defendant did not know what the grand jury testimony of the other witnesses was*, and that the principal purpose in making the request was the hope of developing impeaching, or at least contradictory, testimony." [Emphasis added.] [67 N.M. at 289, 354 P.2d at 1003].

The Court said:

It is most difficult to understand how a defendant, who has never had access to testimony before a grand jury, can show a particularized need for such testimony, for it can only be after seeing the same that it can be determined whether there is a conflict. *If the defendant has a right at all to see the grand jury testimony of a witness who is in the process of testifying at the trial, he should certainly have the right to make his own determination whether the prior testimony was conflicting or impeachable.* . . .

*It would appear that the rule adopted by the New York courts is a sound one.* The practice appears to be that if the district attorney uses the grand jury testimony during the trial, the defendant will be granted inspection. [Citations omitted.] That jurisdiction also holds that the extent of inspection will be determined by the court according to the circumstances of each case, *and that the defendant will be allowed to examine only the testimony of the witness that he wishes to cross-examine.* [Citations omitted.] [Emphasis added.] [67 N.M. at 291, 354 P.2d at 1005].

Reduced to its simplicity, the court "determined that where the prosecutor used grand jury testimony at the trial, the defendant should be permitted to examine the grand jury testimony of that witness for the purpose of cross examination." *State v. Tackett, supra.* *Tackett* held that grand

jury testimony could not be obtained "*in advance of trial.*" *Tackett* is not applicable. *Morgan* pointed out that we have no rule of procedure comparable to Federal Rule of Criminal Procedure 6(c) that has been judicially declared to include "a particularized. need." *Mascarenas v. State, supra.*

The first deviation from the *Morgan* rule occurred in *State v. Valles, supra,* where conviction of the defendant on this appeal was affirmed. One basis of the decision was that "nothing in the record shows the grand jury minutes were used at the trial." This reason was erroneous. In *Morgan,* the fact was that the district attorney "used the transcript of their grand jury testimony as a basis for his questions." This does not mean that the district attorney in *Valles,* who kept the transcript in his office safe, was entitled to proceed in court to question the grand jury witness, thumb his nose at the defendant, and march to victory before the jury. All that was necessary under *Morgan* was that the district attorney use "grand jury testimony at trial." "Grand jury testimony at trial" means a witness who testified before the grand jury and then testified at trial.

*State v. Baca,* 85 N.M. 55, 508 P.2d 1352 (Ct.App.1973) followed *Valles,* supra. I concurred. My error, like that of many appellate judges, flows from a failure to study the history of this rule of law.

"[O]nce the witness has testified at the criminal trial about that which he testified before the grand jury, the accused is entitled to an order permitting examination of that portion of the witness' grand jury testimony relating to the crime for which defendant is charged." *State v. Sparks,* 85 N.M. 429, 431, 512 P.2d 1265, 1267 (Ct.App. 1973), approved in *State v. Felter,* 85 N.M. 619, 515 P.2d 138 (1973); *State v. Vigil,* 87 N.M. 345, 533 P.2d 578 (1975).

Another reason given was that *Tackett, supra,* called for "a particularized need." That reason may be true when a defendant demands grand jury testimony "in advance of trial," not during trial. "There can be no valid reason for requiring the defendant to show a particularized need for the grand jury testimony of a witness who has already appeared and testified publicly in the criminal trial." *State v. Vigil,* 85 N.M. 735, 516 P.2d 1118 (1973). This reason given in *State v. Valles, supra,* was erroneous. See also, *State v. Sparks, supra,* as discussed in *State v. Felter, supra.*

The interest of a state in a criminal prosecution "is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). "Justice" is a term that varies from judge to judge, dependent upon his experience in the courtroom. A judge with knowledge and experience knows, (1) that, perhaps, the testimony of the witness at trial may have concealed information given by the witness to the grand jury or the testimony at trial is contradictory and impeachable.

(2) That the art of cross-examination for impeachment purposes is invaluable in a search for the truth. It is a cornerstone in the trial of a case. A cornerstone is a large stone laid at the base of a building to strengthen the two walls forming a right angle. In figurative use, it unites the jury and the trial to assure the fair administration of justice in the courts. The jury should have the assurance that the doors that may lead to the truth have been unlocked. It is not necessary for a defendant to demonstrate actual prejudice when the right of cross-examination is denied. In *State v. Romero,* 87 N.M. 279, 282, 532 P.2d 208 (Ct.App.1975), the following was quoted.

As pointed out in *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966):

"[It is not] realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate."

In *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931), the Court said:

> Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. [Citations omitted.] It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. [Citations omitted.] *To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.* [Citations omitted.]

.     .     .     .     .

(3) That "The right of cross-examination is a part of the constitutional right to be confronted with the witnesses against one." *State v. Sparks, supra,* 85 N.M. at 430, 512 P.2d at 1266.

(4) That disclosure, rather than suppression of relevant matters, ordinarily promotes the proper administration of criminal justice. Rarely is the prosecution justified to have exclusive access to a storehouse of relevant facts.

(5) "[O]nce the witness has testified publicly at the criminal trial, any privilege that he had with respect to his testimony on the same subject before the grand jury is lost." *State v. Morgan, supra,* 67 N.M. at 290, 354 P.2d at 1004.

(6) That the determination of what may be useful to the defense can only be made by the attorney for the defendant.

As to the grand jury testimony of Dale Eugene Blythe, the first witness, it is true that the request for his grand jury testimony was not made until the witness had left the stand on a Friday. The following Monday, the defendant made demand that the grand jury minutes be available so that proper examination of all witnesses could be made. The court denied the motion because it was untimely made. Thereafter five grand jury witnesses listed in the indictment testified at trial.

Technically, defendant was not entitled to the grand jury testimony of the grand jury witnesses prior to their call to the stand. A defendant is not entitled to all of the grand jury minutes. He is limited to the witness' testimony as to the specific offense. If the witnesses had not been called, their grand jury testimony would properly be locked in the safe of the district attorney. But it is clear that defendant meant to demand the grand jury testimony of witnesses who would testify at trial as they were called to the stand. Defendant's demand was timely filed.

HENDLEY, Judge (dissenting).

For dissent purposes I assume but do not decide that the rule of *State v. Vigil,* 85 N.M. 735, 516 P.2d 1118 (1973) is retroactive.

Appellate counsel accidently found the Grand Jury transcript. The only discrepancy complained of is Mr. Martinez' testimony before the Grand Jury and at Trial.

*Grand Jury Testimony*

"Q. Did you see a weapon of any kind?

"A. Yes, I did.

"Q. What did you see?

"A. *A .38 automatic.*

"Q. Was this in his hand?

"A. It was in his right hand." (Emphasis ours)

*Trial Testimony*

"Q. Could you describe the gun he had?

"A. It was—what it looked like to me was *a .32 Beretta automatic.*

"Q. Do you know guns?

"A. Well, I just recently got out of the service."

(Emphasis ours)

When viewing the receiving end of a pistol the barrel size may vary. To some it may seem the size of a large open pit. A .38 and a .32 have a different diameter of approximately ⅛ of an inch. Automatics generally have a similarity in design. The issue at trial was the identity of defendant. Defendant had several alibi witnesses. The state had four eye witnesses. It was undisputed that the robber had a gun.

Defendant attempts to elevate the discrepancy, which is at best harmless error, when he states:

"The conflict in the testimony of Martinez is clear—and bothersome. It is material. It goes to credibility. It raises a question either about the *perceptive capacity* of the witness Martinez or his *veracity* or both. Therefore, it raises a serious question about the reliability of the *identity* testimony of witness Martinez."

Section 41–23–51, N.M.S.A.1953 (2d Repl. Vol. 6, 1972) states that unless ". . . such action appears to the court inconsistent with substantial justice . . ." it is harmless error. I would hold the error harmless. *State v. Baros*, 87 N.M. 49, 529 P.2d 275 (Ct.App.1974); *State v. Benavidez*, 87 N.M. 223, 531 P.2d 957 (Ct.App.1975); *State v. Turner*, 90 N.M. 79, 559 P.2d 1206 (Ct.App.1976). Substantial justice was done and defendant received a fair trial.

Accordingly, I dissent.